1

In the Matter of Arbitration

between

New Orleans
Cold Storage

and

International Brotherhood of Teamsters,
Local 270

FMCS 16168-51150-7
Termination,
Esau Taylor

before

John Barnard
Arbitrator

**For the Company**                          Mr. Craft Jackson
                                             Plant Manager

**For the Union**                            Mr. Samuel Morris, Esq.
                                             Godwin, Morris et al PC

August 3, 2016
Hilton Airport
New Orleans, Louisiana


EXHIBIT
B

## The Issue

Was the termination of grievant Esau Taylor for just cause?  If not, what is the
proper remedy?

## Authority

### Collective Bargaining Agreement

Article VII
Discharge

The Employer shall at all times possess and retain the right to hire and discharge,
provided the discharge shall be for just cause.  The Union shall be notified if all
discharges in writing within seventy two hours setting forth the reason for discharge.

## Background

The grievant, Esau Taylor, had been employed by the Company beginning in January,

2013. His primary assignment was that of a loader, assigned to the docks.

Plant Manager, Craft Jackson verbally terminated Taylor on October 13, 2015.  The

written notice of termination stated,

> On 10/13/15 Esau Taylor was asked by Jason Gooding did he bring warm gear,
> he replied, no he did not.  I, Craft Jackson asked Esau if Jason had informed him
> to bring something warm and he stated yes.  I told Esau that he needs to go get
> something warm to work in the freezer and he stated he lived in Ms. And if he
> went home he wasn't coming back.  I asked Esau to come to the office and he
> did not so I paged him over the loud speaker was he coming, what do you want?
> See attached.

Attached to the stated Notice of Termination were two documents, an e-mail from

Jason Gooding to Craft Jackson dated October 13, 2015, and a handwritten note,

unsigned.  In reading the unsigned note, it seems logical such was written by Jackson.

Such note read,

> I stated I want you to lose the attitude and lower your voice. He then stated I'm grown, what do you want? I then told him I wanted him to go home and come back with a better attitude and he stated he wasn't going anywhere. I informed him that he was going to leave and I asked Jason to alert Harbor Police Esau stated Fuck Harbor Police, you got me fucked up. Esau was informed that he was terminated at this point and that he needed to leave and not return. Esau stated I'm coming to talk to Randy tomorrow and I will be back in this Bitch tomorrow.

Jackson then sent an e-mail the same date which contained the same information as stated by Jackson to Randy Scarparo and to Karen Whiddon.

Such termination was timely grieved, and was dated October 14, 2015. The grievance stated,

> ...My name is Esau Taylor on October 13, 2013 at 6:15 pm I was getting prepared for my shift in the locker room. I left my hoodie and shirt in the locker room and proceeded outside until my shift officially start on the way outside Jason Gooding ask me did I have something warm to put on. I replied in a joking manner. Craft replied in a harsh manner. I told you to bring some things warm. You going in the freezer. He proceeded to tell me that I had to go home and get something warm. I replied I live in Mississippi. If I go home I'm not coming back. He replied that I needed to meet him in his office. When I got in the office he asked why didn't I bring something warm. I told him I was playing with Jason, I have clothes in the locker room. He asked why I didn't just say that. I told him I was playing with Jason. He replied go home, your service is no longer needed. I asked him why. He said I was fired.

> I protest my termination that I received on October 13. I request to made whole with all back pay and benefits, and this termination from my record.

Such matter is now properly before the arbitrator.

<u>Company Position</u>

The Company terminated Taylor for his inability to follow directions. He has had a continuous issue with following directions during his time employed.

His actions during the final incident on October 13, 2015 were aggressive,

threatening in nature, and unacceptable by the Company's standards. The Company cannot tolerate such aggressive behavior.

As to the question of Taylor punching in, the Company submitted Taylor's Time Punch Edit History for October 13, 2015. Such shows Taylor personally punched in with his hand at 5:45 pm, and Assistant Manager Stephanie Duet manually edited his clock out punch as he did not punch out. A reason for the punch states System Generated Punch for a biometric punch using the employee's fingerprint. The reason for the punch states Timecard Edit with the corresponding manager's name as to who edited the card. Also, the three days prior to October 13 shows the level of Taylor's consistency of punching into the timeclock on a regular basis. He punched in and out on that day as he did so regularly.

If Taylor had cold gear in his locker, his response to Gooding, his manager, should have been that such was in his locker. At any point during this situation Taylor could have acknowledged that he had the gear, and had mentioned his response was in a joking manner. Instead, he allowed the situation to escalate, showing the manner was not a joke, nor was Taylor, Jackson, and Gooding taking it as such.

Taylor's previous written communications concerning his inability to follow directions, complete assignments, and having a positive working environment shows that this incident was not isolated.

In conclusion, the evidence proves that Taylor cannot follow directions and he has a complete disregard for management, staff members, and policy. After many attempts with written warnings and verbal counseling, Taylor is not a good fit for employment and is a detriment to staff morale and the Company's ability to provide quality service to its

customers.

The grievance should be denied.

### Union Position

It is the Union's position in this matter that the Company did not have just or proper cause to discipline Taylor at all. For just cause to exist, the Company must first prove that the alleged misconduct occurred. The Work Record and the Employee Discipline Report states that Taylor was terminated for insubordination. Even if the facts surrounding the alleged misconduct did occur, it does not show just cause for termination. One incident of alleged insubordination does not warrant the immediate firing of an employee. That is especially true where, as here, the incident began as an innocent joke. At the time of the incident, Taylor's clothing was in his locker. His statement to Jason Gooding was simply a joke, which was blown out of proportion.

An employer's power to punish employee conduct is limited to on duty actions. To discipline an employee for off duty conduct, the employer must show hard evidence of a nexus showing that the off duty conduct adversely affected the employer's operations or important interests. Employee misconduct adversely affects Company's operations where it 1) harms the employer's business, 2) adversely affects the employee's ability to perform the job, or 3) leads other employees to refuse to work with the offender. Taylor's actions did none of those.

Taylor was over an hour early for his shift at the time of the incident. He had not yet clocked into work, and never did that day. Taylor testified that he had not clocked in as he was sent home prior to his start time. The Company's claim that he clocked in at

5:45 and out at 7:30 is false. Taylor was not paid at all for the day in question.

The alleged off the clock misconduct did not adversely affect the Company. There was no reason to discipline Taylor at all, especially with a summary discharge. Taylor was not yet on the clock. He had his freezer clothing. He was prepared for work. The Company had no reason to discipline him.

Taylor was ready to work on October 13, 2015. He arrived at work more than an hour early for his shift. His freezer clothes were stored in his locker as he had used them the day before. At no time was he unable to begin his shift. He did not need to return home to get freezer clothes, they were already on site. He made this clear to Craft Jackson by telling him that he had only been playing with Jason Gooding. Taylor's joke does not change the fact that he had his clothes, he was early for his shift, and he was able to work his shift. There was no reason to send him home and no reason at all to discipline him.

The Company here failed to administer any progressive discipline which would have given Taylor the opportunity to correct any alleged misconduct. He did not receive any warning notice or progressive discipline prior to his termination. Progressive discipline provides employees with notice of the employer's requirements, consequences, and the ladder of discipline. Specifically, the employee ought to know how close he or she is to the ultimate jeopardy of discharge. In contrast, Taylor had no similar warning. He was not provided a warning notice, suspension, or any other method of progressive discipline aimed at correcting his alleged misconduct. And even if the alleged misconduct did occur, a bad attitude does not meet the just cause. Taylor did nothing to warrant discipline. He simply made a joke to a supervisor that he did not have his

freezer clothes, when in fact he did. Neither making a joke, nor the alleged bad attitude raise Taylor's actions to a level warranting immediate discharge.

In conclusion, on October, on October 13, 2015, Esau Taylor only made a joke about not having freezer clothes that his boss knew he had. Taylor did nothing to warrant any discipline, let alone immediate discharge. He should be reinstated and made whole in all respects.

<u>Discussion and Conclusions</u>

There were some comments made by the parties as to whether or not Taylor had punched in or out on the evening of October 13. Such subject matter, upon review, is not central to this decision, and as such, will not be a consideration.

That said, the focus of this discussion will be the Company's position that Taylor was insubordinate the evening of October 13, 2015, and that he was terminated verbally that evening. Craft Jackson, Plant Manager, in his written report on the incident mentioned,

> ...I then told Esau that he could go home for the night and to come back with a better attitude, to which he again asked what do you want? I then told Esau that he could go home for the night and to come back with a better attitude, to which he stated no I'm not. I informed him at this time that yes he was going home and I told Jason to alert Harbor Police. He then told me Fuck Harbor Police, and that I had him Fucked up. at this time I informed Esau that he was now terminated and he began to ask me for what I informed him that he could answer that for himself. Esau then told me that he would be back to talk to Randy in the morning and that he would be back in this Bitch tomorrow...

The Company's Work Record and Employee Disciplinary Report, dated October 13, 2015, reflects the reason for Taylor's termination as Insubordination.

Insubordination is recognized when an employee is given a direct order by

supervision which is workplace related.  Such order must be reasonable and not pose a

health or safety hazard for the employee if such order is to be carried out.  The order

must be fully understood by the employee, such as the supervisor asking that

employee if he/she understands the order.  Further, the employee must be told that that

a refusal to obey the order could subject that employee to discipline or termination.  The

employee must acknowledge his/her understanding of the consequences.  If possible,

the supervisor issuing the order is well served if there is another witness to the

interaction with the employee.  If the described procedure here is followed, such should

form the basis of a defendable charge of insubordination, presuming the employee still

refuses the order.

   With that, a review of the testimony and evidence must lead to the conclusion that

the charge of Insubordination by the Company cannot be sustained.  There was no

direct orders given to Taylor by Jackson.  Jackson asked Taylor to come to his office,

and when he didn't come, he was paged, and then did appear.  At best here, a failure to

follow instructions, but he did in fact go to the office.  Further, Jackson told Taylor that

he "could go home."  Taylor supposedly stated he was not going to do it, at that point

Jackson, in his written report told Taylor,

> ...I informed him at this time that yes he was going home, and I told Jason to
> alert Harbor Police...

Apparently then, according to Jackson, Taylor said,

> ...He then told me Fuck Harbor Police and that I had him Fucked up...

   With that, Jackson gave Taylor a summary discharge.  In his statement, Jackson

wrote,

...At this time I informed Esau that he was now terminated and he began to ask me for what and I informed him that he could answer that for himself...

Taylor then left without further incident.  The reason given by the Company that Taylor was Insubordinate cannot be sustained.

A discussion and conclusion as to the decision to summarily terminate Taylor during the exchange with Jackson necessarily follows.

In this regard, Elkouri & Elkouri, <u>How Arbitration Works</u>, Sixth Edition, states in part,

<u>Due Process and Procedural Requirements</u>

Discharge and disciplinary action by management has been reversed where the action was found to violate basic notions of fairness or due process.
...To satisfy industrial due process, an employee must be given an adequate opportunity to present his or her side of the case before being discharged by the employer.  If the employee has not been given such an opportunity, arbitrators will often refuse to sustain the discharge or discipline assessed against the employee. The primary reason arbitrators have included certain basic due process rights within the concept of just cause is to help the parties prevent the imposition of discipline where there is a little or no evidence on which to base a just cause discharge.  Thus, consideration of industrial due process as a component of just cause is an integral part of the just cause analysis for many arbitrators...
(p 967)

As can be seen by a review of the statements/comments by both Jackson and Taylor, due process prior to the decision by Jackson to verbally terminate Taylor was very much lacking.  The emotions of the moment cancelled any chance for due process.

Industrial due process could have easily been achieved in this instance had the Company only suspended Taylor pending investigation, rather than terminating him on the spot.  Then, after some investigation into the entire matter by the Company, a meeting with Taylor should have been arranged for him to explain his side of the story. Following that then, a decision would have been warranted.

In sum, the record reflects that the charge of insubordination was not present and

cannot be sustained, and further, the fact that Taylor was not afforded his due process rights, such must lead to decision that just cause was not present in the Company's decision to terminate Taylor.  Certainly Taylor could have been forthcoming about his freezer equipment, rather than to joke about it.  While the joke probably was not to harm or to mislead, nevertheless the entire episode was blown out of proportion by both Jackson and Taylor, and needless emotions took over a situation that could have been handled in a more rational and calm manner.  As such, the decision by the Company to terminate Taylor on the spot was inappropriate, and not justified.  Based upon the record as a whole, a short suspension is appropriate.  As a final note, Gooding's memo cannot carry any weight, and must be regarded as only hearsay as Gooding was not present to testify.

<u>Decision</u>

As discussed, the decision to terminate grievant Esau Taylor was not for just cause.

He is to receive a two week disciplinary suspension starting from his termination date, and is to be reinstated without delay.

Upon reinstatement, his seniority is to be restored, and he is to be awarded backpay following his temporary suspension until reinstatement.  From the award of backpay, the Company is to be deduct any and all interim earnings, including any unemployment compensation having been received.  His contractual benefits are not to be interrupted and are to be reinstated upon his return to work.

I will retain jurisdiction over this matter until the decision has been fully implemented.

_____                    _____
October *18*, 2016                          John B. Barnard
Dallas, Texas                               Arbitrator