UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NEW ORLEANS COLD STORAGE                         CIVIL ACTION
AND WAREHOUSE COMPANY LTD.

VERSUS                                           NO. 17-56

TEAMSTERS LOCAL 270, ET AL.                      SECTION "B"(3)

## ORDER AND REASONS

Before the Court are cross-motions for summary judgment filed by Plaintiff New Orleans Cold Storage and Warehouse Company, Ltd. and Defendants Teamsters Local 270 and Esau Taylor. Rec. Docs. 16-17. The parties timely filed opposition memoranda. Rec. Docs. 19-20. For the reasons discussed below,

**IT IS ORDERED** that Plaintiff's motion (Rec. Doc. 17) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion (Rec. Doc. 16) is **GRANTED**.

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of the October 13, 2015 termination of Defendant Esau Taylor ("Taylor") by his former employer, Plaintiff New Orleans Cold Storage and Warehouse Company, Ltd. ("NOCS"). Rec. Doc. 1-1 at ¶ 5. Taylor was employed under a Collective Bargaining Agreement ("CBA") between NOCS and Defendant Teamsters Local 270 ("the Union"). *Id.* at ¶ 4; *see also* Rec. Doc. 16-4.

Article VII of the CBA, titled "DISCHARGE," provided that "[t]he Employer shall at all times possess and retain the right to

1

hire and discharge, provided the discharge shall be for <u>just cause</u>." Rec. Doc. 16-4 at 3 (emphasis added).

Following Taylor's termination, the Union requested arbitration under the CBA. Rec. Doc. 1-1 at ¶ 6. Article X of the CBA, titled "GRIEVANCE PROCEDURE," provides:

> The jurisdiction of the arbitrator is limited to:
> (a) Interpretation, application of the specific terms of this Agreement, and adjudication of issues arising out of the application of those specific terms, and
> (b) A decision or award which is not contrary to, and <u>in no way adds to, subtracts from or alters, the plain words of this Agreement</u> as used in their most commonly understood meaning, and
> (c) Reversing the decision of the Company in matters involving the fairness of discipline, discharge or change of status of an employee, <u>only if it is found that the Company has acted arbitrarily and in violation of this Agreement</u>.

Rec. Doc. 16-4 at 4 (emphasis added).

The issue presented to the arbitrator, John Barnard, was stated as follows: "Was the termination of grievant Esau Taylor for just cause? If not, what is the proper remedy?" Rec. Doc. 16-5 at 2. After reviewing Article VII, the positions of both NOCS and the Union, and various documents (including the notice of termination, an email, and an unsigned handwritten note), the arbitrator determined that Taylor was allegedly terminated for insubordination. *Id.* at 7. He defined insubordination as an employee's failure to follow a reasonable order after being warned that failure to obey the order could subject the employee to

discipline. *Id.* at 7-8. The arbitrator found that Taylor was never given a direct order. *Id.* at 8. He then noted that

> The primary reason arbitrators have included certain basic due process rights within the concept of just cause is to help the parties prevent the imposition of discipline where there is a little or no evidence on which to base a just cause discharge. Thus, <u>consideration of industrial due process as a component of just cause is an integral part of the just cause analysis for many arbitrators</u>.

*Id.* at 9 (quoting Elkouri & Elkouri, *How Arbitration Works*, p. 967 (6th ed.)) (emphasis added). In this case, the arbitrator found that "due process prior to the decision . . . to verbally terminate Taylor was very much lacking. The emotions of the moment cancelled any chance for due process." *Id.* He concluded that

> the charge of insubordination was not present and cannot be sustained, and further, the fact that Taylor was not afforded his due process rights, such must lead to [the] decision that just cause was not present in the Company's decision to terminate Taylor . . . the entire episode was blown out of proportion . . . and needless emotions took over a situation that could have been handled in a more rational and calm manner. As such, the decision by the company to terminate Taylor on the spot was inappropriate, and not justified.

*Id.* at 9-10.

Accordingly, on October 18, 2016, the arbitrator determined that Taylor was not terminated for just cause, that Taylor should be reinstated, subject to a two-week suspension, that his seniority and contractual rights be restored, and that he be awarded backpay after deducting "any and all interim earnings, including any unemployment compensation having been received." *Id.* at 11.

3

On December 19, 2016, NOCS filed a petition to vacate the arbitration award in the Civil District Court for the Parish of Orleans. Rec. Doc. 1 at ¶ 1. It specifically requested that the arbitration award be vacated or otherwise modified to reflect a decision in its favor, pursuant to Louisiana Revised Statute 9:4210(D), and that it be awarded costs. Rec. Doc. 1-1 at 4, ¶ 11.

On January 4, 2017, Defendants removed the action to this Court, alleging original and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367 because Plaintiff's claims arose out of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Rec. Doc. 1 at ¶¶ 3-5.[1] On January 9, 2017, Defendants filed an answer and counterclaim against NOCS, seeking to enforce the arbitration award. Rec. Doc. 5. They specifically alleged that NOCS had "not taken any steps to implement the arbitrator's decision," and consequently asked that the Court dismiss Plaintiff's complaint, enforce the arbitration award, and award the Union the reasonable costs and attorneys' fees incurred in enforcing the award. *Id.* at 5-6.

---

[1] This statute provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). For discussions regarding the jurisdictional aspects of § 301, *see, e.g. Houston Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 403 (5th Cir. 2014); *Arceneaux v. Amstar Corp.*, No. 03-3588, 2004 WL 574718, at *2 (E.D. La. Mar. 22, 2004).

4

## II. THE PARTIES' CONTENTIONS

In both the original petition and in the instant motion for summary judgment, NOCS argued that the arbitrator exceeded his authority under the CBA by (1) reinstating Taylor without finding that NOCS "acted arbitrarily and in violation of the CBA" and (2) "imposing his own discipline upon Mr. Taylor and substituting his judgment for that of the employer." Rec. Docs. 1-1 at 4, ¶¶ 9-10; 17-3 at 3, 7-8. As to the latter, NOCS argued that the arbitrator inappropriately added to the CBA by requiring "industrial due process"; the arbitrator acted in an inconsistent manner by reinstating Taylor, despite finding that Taylor should have been suspended; and that the "CBA does not allow modification of discipline in cases where the contract does not grant him the authority to do so." Rec. Doc. 17-3 at 9-11.

Defendants respond that the arbitrator's decision took note of the relevant CBA article and made a decision that "was entirely grounded in the provisions of the Agreement," as evidenced by his repeated references to the absence of "just cause." Rec. Doc. 16-2 at 8, 10-11 (citing Rec. Doc. 16-4 at 2, 10-11).[2]

---

[2] Defendants also argue that Taylor is not a proper party to this action. Rec. Doc. 16-2 at 4. The Labor Management Relations Act provides that a "labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets." 29 U.S.C. § 185(b). *See also Smith v. Am. Postal Workers Union*, 306 F. App'x 178, 180 n.2 (5th Cir. 2009) (citing *Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 247-48 (1962)); *Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401, 416-17

## III. LAW AND ANALYSIS

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)); *see also TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Though, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus

---

(1981). NOCS does not address this argument. Defendants' motion for summary judgment on this issue is therefore deemed unopposed.

6

shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

The Supreme Court has explained that where a CBA contains an arbitration clause, "the courts play only a limited role when asked to review the decision of an arbitrator." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987). "The reasons for insulating arbitral decisions from judicial review are grounded in the federal statutes regulating labor-management relations. These statutes reflect a decided preference for private settlement of labor disputes without the intervention of government." *Id.* (citing 29 U.S.C. § 173(d) (providing that "[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing [CBA]"); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 647 (1986)). To that end, "[t]he courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract" and "[a]s long as the arbitrator's award 'draws its essence from the [CBA],' and is not

7

merely 'his own brand of industrial justice,' the award is legitimate." *United Paperworkers*, 484 U.S. at 36 (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 595 (1960)) (emphasis added); *see also Houston Lighting & Power Co. v. Int'l Bhd. of Elec. Workers, Local Union No. 66*, 71 F.3d 179, 182 (5th Cir. 1995) (quoting *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n, AFL-CIO*, 889 F.2d 599, 602 (5th Cir. 1989)). "In applying the 'essence' test, [the Fifth Circuit has] stated that an arbitration award 'must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the [CBA] . . . [T]he award must, in some logical way, be derived from the wording or purpose of the contract.'" *Bruce Hardwood Floors, Div. of Triangle Pac. Corp. v. UBC, S. Council of Indus. Workers, Local Union No. 2713*, 103 F.3d 449, 451 (5th Cir. 1997) (quoting *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1325 (5th Cir. 1994)) (emphasis added).

"Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *United Paperworkers*, 484 U.S. at 37-38. As to the interpretation of the contract, "[t]he arbitrator may not ignore the plain language . . . but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that

8

the arbitrator misread the contract." *Id.* at 38 (citing *Enter. Wheel*, 363 U.S. at 599); *see also E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 61-62 (2000) ("That is because both employer and union have granted to the arbitrator the authority to interpret the meaning of their contract's language, <u>including such words as 'just cause.'</u> They have 'bargained for' the 'arbitrator's construction' of their agreement. And courts will set aside the arbitrator's interpretation of what their agreement means only in rare instances.") (internal citations omitted) (emphasis added).

"So, too, where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." *United Paperworkers*, 484 U.S. at 38. "[A]s long as the arbitrator is <u>even arguably construing or applying the contract and acting within the scope of his authority</u>, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* (emphasis added).

> When an arbitrator is commissioned to interpret and apply the [CBA], he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the [CBA]; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance

9

> from many sources, yet his award is legitimate only so long as it draws its essence from the [CBA]. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*Enter. Wheel*, 363 U.S. at 597.

Further, "[t]he arbitrator's authority is circumscribed by the arbitration agreement, and he can bind the parties only on issues that they have agreed to submit to him. Whether an arbitrator has exceeded these bounds is an issue for judicial resolution." *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 583 (5th Cir. 1980) (citation omitted); *see also Delta Queen*, 889 F.2d at 602 ("federal courts are free to scrutinize the award to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the [CBA]. Where an arbitrator exceeds his contractual authority, vacation or modification of the award is an appropriate remedy") (citations omitted). "The scope of the arbitrator's authority, however, is not always controlled by the [CBA] alone. That agreement constitutes merely a promise to arbitrate. Before arbitration can actually proceed, it is necessary for the parties to supplement the agreement to arbitrate by defining the issue to be submitted to the arbitrator and by explicitly giving him authority to act." *Piggly Wiggly*, 611 F.2d at 583 (citations omitted). "[O]nce the parties have gone beyond their promise to arbitrate and have

actually submitted an issue to an arbiter, we must look both to their contract and to the submission of the issue to the arbitrator to determine his authority." *Id.* (citations omitted); *see also Holmes v. Orleans Par. Sch. Bd.*, 95-2451, p. 10 (La. App. 4 Cir. 7/9/97); 698 So. 2d 429, 435, *writ denied,* 97-2102 (La. 11/14/97); 703 So. 2d 630 (noting that the court should ask whether the CBA gave the arbitrator the power to impose the remedy chosen and, if not, whether the submission agreement or the grievance itself gave the arbitrator that power) (citing *Piggly Wiggly*, 611 F.2d at 583-84; *Mobil Oil Corp. v. Oil, Chem. & Atomic Workers Int'l Union & Local Union No. 4-522 O.C.A.W.I.U.*, 777 F. Supp. 1342, 1349 (E.D. La. 1991) (holding that "[w]hen there is no formal submission agreement, the arbitrator is empowered to decide the issue under review, and that decision is due the same deference as his interpretation of the [CBA]," and looking to the opening statements and testimony to determine the issue submitted to the arbitrator)).

The Court is not persuaded by NOCS's first argument that the arbitrator exceeded his authority by failing to find that the company acted arbitrarily and in violation of the CBA, as required by Article X. While the arbitrator may not have explicitly stated that NOCS acted arbitrarily and in violation of the CBA, that conclusion is "rationally inferable" from his decision. The CBA requires any discharge to be for "just cause" (Rec. Doc. 16-4 at 3) and the arbitrator specifically concluded that "the decision to

terminate . . . Taylor was not for just cause," (Rec. Doc. 16-5 at 11). Therefore, the arbitrator did find that NOCS acted in violation of the CBA. Plus, this Court can rationally infer from the arbitrator's various statements that he considered the termination decision to be arbitrary. For example, the arbitrator found that "[t]he emotions of the moment cancelled any chance for due process," "the charge of insubordination was not present," "the entire episode was blown out of proportion," "needless emotions took over a situation that could have been handled in a more rational and calm manner," and "the decision by the Company to terminate Taylor on the spot was inappropriate, and not justified." Rec. Doc. 16-5 at 9-10. These statements clearly indicate to the Court that the arbitrator considered the decision to terminate Taylor arbitrary.

Furthermore, the Court is not persuaded by NOCS's second argument that the arbitrator exceeded his authority by substituting his own judgment for that of the company's. It appears to the Court that this argument is twofold: NOCS is concerned by the arbitrator's (1) references to "industrial due process" and (2) decision to reinstate Taylor subject to a two-week suspension.

First, even though the CBA does not refer to industrial due process, the arbitrator explained in his decision that the concept informs one's understanding of "just cause," which was required by the CBA. Rec. Docs. 16-4 at 3; 16-5 at 9. These parties agreed to

12

arbitrate this dispute, so "it is the arbitrator's view . . . of the meaning of the contract that they have agreed to accept." *United Paperworkers*, 585 U.S. at 37-38. Accordingly, it is not this Court's role to review the arbitrator's interpretation of "just cause." *E. Associated Coal Corp.*, 531 U.S. at 61-62.

Second, the parties specifically asked the arbitrator to decide if the termination was for just cause and, "[i]f not, what is the proper remedy?" Rec. Doc. 16-5 at 2. NOCS asked the arbitrator to fashion an appropriate remedy and now complains because he required a suspension, rather than termination. By defining the issues before the arbitrator, the parties gave the arbitrator the authority to act on those issues. *Piggly Wiggly*, 611 F.2d at 583; *see also Mobil Oil Corp.*, 777 F. Supp. at 1349. Even if the parties had not explicitly given the arbitrator the authority to fashion his own remedy, arbitrators must be given the "flexibility" to meet a wide variety of situations and, as long as the chosen remedy "draws its essence from the [CBA]," it will be upheld. *Enter. Wheel*, 363 U.S. at 597. Here, Article IX of the CBA provides, in pertinent part, that "[t]he Employer also retains the right to discipline employees for just cause including suspension and/or discharge." Rec. Doc. 16-4 at 3. Therefore, the arbitrator's award drew its essence from the CBA and this Court will not vacate or modify it.

## IV. CONCLUSION

Ultimately, even though we have disagreements with some aspects of the arbitration decision, we "must affirm the award . . . if we determine that the arbitrator has acted within the ambit of his authority as set by an arguable construction and application of the CBA . . . ." *Weber Aircraft Inc. v. Gen. Warehousemen & Helpers Union Local 767*, 253 F.3d 821, 824 (5th Cir. 2001) (citations omitted); *see also Beaird Indus., Inc. v. Local 2997, Int'l Union*, 404 F.3d 942, 944 (5th Cir. 2005). The arbitrator's decision in this case was based on an arguable construction and application of the CBA and must therefore be affirmed.

**IT IS ORDERED** that Plaintiff's motion (Rec. Doc. 17) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion (Rec. Doc. 16) is **GRANTED**.

New Orleans, Louisiana, this 15th day of August, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE

14